IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EDWARD W. GRUBB, III,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>Defendant. | CV 19-50-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Edward W. Grubb, III ("Grubb") brings this action against Defendant BNSF Railway Company ("BNSF"), under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and the Family Medical Leave Act ("FMLA"). (Doc. 18.)

BNSF previously moved to dismiss this action for improper venue. (Doc. 4.) The Court granted Grubb leave to amend his Complaint and denied BNSF's motion as moot. (Doc. 17.) Grubb subsequently filed a First Amended Complaint. (Doc. 18.) BNSF contends venue remains improper. Accordingly, BNSF filed a Renewed Motion to Dismiss for Improper Venue or Alternatively to Transfer Venue. (Doc. 19.) The motion is fully briefed and ripe for the Court's review. (Docs. 21, 26.)

Having considered the parties' submissions, the Court **RECOMMENDS** BNSF's renewed motion be **DENIED**.

## I. BACKGROUND

Grubb was hired by BNSF to work as a trackman in Havre, Montana on March 26, 2012, and worked at various positions and locations for the railroad between 2012 and 2017. In 2017, Grubb worked for BNSF as a track laborer on a mobile tie gang. Employees who perform that type of work travel to different locations and different states to perform their work.

Sometime during this time period, Grubb's son was diagnosed with brain cancer, and Grubb requested a transfer to the Montana area to be close to his son's medical specialists. In approximately June 2017, Grubb joined a tie gang that was working in Montana. At the time, Grubb maintained a residence in Missouri, but asserts he rarely worked in Missouri. Grubb currently resides in Minnesota.

Grubb suffers from multiple mental disorders and is on several medications to treat his conditions. On July 26, 2017, Grubb alleges he had an adverse reaction to a new medication, and engaged in misconduct at multiple hotels in Glendive, Montana. Grubb had reportedly been found sleeping in a stairwell at the Holiday Inn Express that morning around 6:30 a.m. (Doc. 20-1 at 12-13.) The hotel's night auditor woke him up, and Grubb told her that he needed to check out. (*Id.* at 11, 13-14.) The night auditor noticed his key was not from the Holiday Inn

Express and verified that he was not a registered guest at the hotel. (*Id.* at 14.) Grubb then made his way to the Super 8 hotel around 7:30 a.m. (*Id.* at 11, 14.) Grubb went behind the front desk stating he wanted to get into his room. (*Id.* at 11, 15.) The hotel staff determined he was not a guest at the Super 8. (*Id.*) Grubb allegedly became belligerent, raised his voice, cursed and stated he knew he was staying at the hotel. (*Id.*) Eventually he left the hotel, breaking part of a door and causing approximately $65 in damage. (*Id.*) After Grubb left the Super 8, he went to the Days Inn hotel, where he was a registered guest. (*Id.*) Grubb states he does not recall what happened, but he admitted his misconduct.

At approximately 2:00 p.m. on July 26, 2017, Grubb's direct supervisor in Montana, Daniel Burbach, received an email concerning Grubb's behavior earlier that morning. (*Id.* at 9-10.) After receiving the email, Burbach conducted an investigation, and obtained statements from witnesses at the hotels. (*Id.* at 12.) Later that evening, around 5:30 p.m., Burbach, Levi Burch, and Chris Daubel went to Grubb's hotel room to advise him that he was being removed from service (i.e., suspended without pay), pending an investigation into his conduct earlier that day. (*Id.* at 22-23.)

The investigation hearing was originally scheduled to take place in Glendive, Montana. (Doc. 20-1 at 57.) However, Grubb's union submitted a

request to change the venue of the hearing to Kansas City, Kansas, which was granted. (*Id.* at 58, 73.)

An investigation hearing was held on August 4, 2017. The Conducting Officer at the hearing was Samuel Casey Turnbull, who is a Division Engineer in Kansas City, Kansas. (*Id.* at 5.) Burbach testified at the hearing regarding his investigation in Montana. (*Id.* at 4.)

Following the investigation hearing, Turnbull forwarded the hearing transcript to Chad Scherwinski, who is a General Director of Line Maintenance. During that time period, Scherwinski's office was physically located in Montana, where he also resided. (Doc. 20-2 at ¶ 2.)

Scherwinski submitted a declaration stating that "[a]fter Mr. Turbull forwarded me the transcript of the investigation and I reviewed it, in an email on August 11, 2017, at 5:32 p.m., I suggested asking the PEPA team (which is part of the Labor Relations Department) for their recommendation. I stated that I wanted to proceed with dismissal based on my reading of the transcript. When I sent that email, I was physically located in Bismarck, North Dakota." (Doc. 20-2 at ¶ 6.) Scherwinski does not state, however, where he was physically located when he received the email from Turnbull or where he was when he reviewed the transcript and determined that he would recommend termination.

Turnbull then sent an email to the PEPA team on August 12, 2017. (Doc. 20-1 at 76.) Scherwinski was copied on the email. (*Id.*) In the email, Turnbull recommended that Grubb be dismissed. (*Id.*)

On August 15, 2017, Stephanie Detlefsen, BNSF's Director of Labor Relations, responded on behalf of the PEPA team. (Doc. 20-3 at ¶¶ 3-4.) Detlefsen indicated she had read the transcript and supported dismissal of Grubb. (*Id.* at 3-4.) Scherwinski was also copied on this email. (*Id.* at 4.) Detlefsen's office is located at BNSF's headquarters in Fort Worth, Texas. (*Id.* at ¶ 2.) She stated that she was physically located in Fort Worth, Texas when she reviewed the transcript and sent the August 15, 2017 email. (*Id.* at ¶ 4.)

Scherwinski then communicated with two Assistant Vice-Presidents located in Fort Worth, Texas, by email and telephone, to determine whether they approved the recommended dismissal. (Doc. 20-2 at ¶ 7.) Again, Scherwinski's declaration is silent as to where he was physically located when had these telephone conversations and sent these emails.

Upon learning that the Assistant Vice-Presidents supported the removal, BNSF terminated Grubb on August 22, 2017. (Doc. 20-1 at 74.) The dismissal letter was sent to Grubb at his home address in Missouri, and was signed by Turnbull. (*Id.*)

/ / /

## II. DISCUSSION

BNSF renews its motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(3) for lack of venue, or in the alternative, requests the Court transfer venue to the Northern District of Texas under 28 U.S.C. § 1404.

### A. Motion to Dismiss for Improper Venue Under Rule 12(b)(3)

When the propriety of venue is challenged under Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009). In considering a Rule 12(b)(3) motion, the Court must draw all inferences in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). However, the "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). If the Court finds venue is improper, it has discretion to dismiss or transfer the case to a permissible venue. 28 U.S.C. § 1406(a).

Grubb's ADA claims are subject to the special venue provision of Title VII, 42 U.S.C. § 2000e-5(f)(3). *Johnson v. Payless Drug Stores Nw. Inc.*, 950 F.2d 586, 587-88 (9th Cir. 1991). Under that statute, venue is proper:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed;

> [2] in the judicial district in which the employment records relevant to such practice are maintained and administered; or
>
> [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice; but
>
> [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

Where the Title VII special venue statute applies, it controls, even if non-Title VII claims are included in the lawsuit. *Mayberry v. Int'l Business Machines Corp.*, 2009 WL 1814436, *3 (N.D. Cal. June 25, 2009). Accordingly, Grubb must show venue is proper under one of the prongs of § 2000e-5(f)(3).[1] BNSF argues venue is not proper in Montana under any prong of §2000e-5(f)(3). Grubb contends venue is proper under the first and third provisions of the statute.

/ / /

---

[1] Grubb has once again argued venue is proper under the general venue statute with respect to his FMLA claim, and therefore, suggests the Court may exercise pendent venue over his related Title VII claim. As the Court previously explained, however, pendent venue is not available in this circumstance because the narrower Title VII venue statute controls. (*See* Doc. 17 at 6 n.2.) *See also Dehaemers v. Wynne*, 522 F.Supp.2d 240, 249 (D.D.C. 2007) (declining to assume pendent venue over the plaintiff's Title VII claim because "when a plaintiff brings a Title VII action, which is covered by Title VII's restrictive venue provision, as well as an action governed by the general venue provision, the narrower venue provision of §2000e-5(f)(3) controls."); *Bartel v. F.A.A.*, 617 F. Supp. 190, 198 (D.D.C. 1985); *Zumba Fitness, LLC v. Brage*, 2011 WL 4732812, *2 (C.D. Cal. Oct. 6, 2011).

**a. Whether an Unlawful Employment Practice was Committed in Montana**

Under the first basis for venue, an alleged unlawful employment practice is considered to have been committed in "both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).

Grubb asserts three causes of action against BNSF under the ADA: Disability Discrimination (Count I); Associational Discrimination (Count II); and Retaliation (Count III). (Doc. 18 at ¶¶47-85.) Grubb alleges BNSF's wrongful discriminatory treatment included: (1) suspending him without pay on July 26, 2017; and (2) terminating him on August 22, 2017. (*Id.* at ¶¶ 57-58; 71-72.) Grubb asserts these unlawful employment practices were committed in Montana.

BNSF does not dispute that venue is proper with regard to Grubb's suspension without pay. BNSF argues, however, that each discrete unlawful employment practice is a separate claim for venue purposes. BNSF asserts Grubb's discharge was not committed in Montana. BNSF therefore contends that because venue is not proper for the discharge claim, the Court lacks venue over the entire case.

"Generally, venue must be established as to each cause of action." *McNeary-Calloway v. JP Morgan Chase Bank*, 863 F. Supp. 2d 928, 964 (N.D.

Cal. 2012). BNSF does not cite any authority, however, that holds each separate unlawful employment practice requires an independent basis for venue. At least one court has indicated that where venue is proper with regard to some of the conduct comprising the plaintiff's claims under Title VII, then venue is proper for the entire case. *See e.g. Berg v. Aetna Freight Lines*, 2008 WL 2779294,*3 (W.D. Pa. July 15, 2008) ("It is true that not all of the relevant acts alleged by [the plaintiff] took place in Pennsylvania, but a number of them did. Thus, the venue requirements of Section 2005e-5(f)(3) are met.").[2] Here, one of the principle discriminatory acts alleged – Grubb's suspension without pay – occurred in Montana.

But even assuming BNSF is correct, and an independent basis for venue is required as to each of the unlawful employment practices alleged in the First Amended Complaint, the Court nevertheless finds venue is proper in Montana.

BNSF asserts Grubb's dismissal was not committed in Montana because the investigation hearing was held in Kansas, the decision to discharge Grubb was made by employees who were located in North Dakota, Kansas and Texas, and the dismissal letter was sent to Grubb's home in Missouri. Grubb, on the other hand,

[2] This does not appear contrary to the rule against pendent venue because Title VII applies to the entire cause of action. This is not a situation where the Court would be applying a general venue statute to assert venue over a claim that is subject to a more restrictive venue provision.

points out that at least one decision-maker in his termination – Scherwinski – lives and works in Montana.

BNSF has not shown that all of the decision-making related to Grubb's dismissal occurred outside of Montana. BNSF submitted a carefully worded declaration from Scherwinski, which only establishes that he sent *one* email while he was in North Dakota. (Doc. 20-2 at ¶ 6.) His declaration is silent, however, as to where he was physically located when he received and reviewed the transcript of the investigation hearing and concluded that termination was warranted, or where he was located when he spoke with and emailed two BNSF vice-presidents to obtain their approval to dismiss Grubb.[3] (*Id.* at ¶¶ 6-7.)

Although Grubb bears the burden to show venue is proper, all reasonable inferences must be construed in his favor as the non-moving party. *Murphy*, 362 F.3d at 1138. Here, Scherwinski lived and worked in Montana during the relevant time period. (*Id.* at ¶ 2.) It is reasonable to assume, absent evidence to the contrary, that an employee regularly conducts work from his home office. BNSF has at most shown that Scherwinski sent a single email while he was outside of Montana. (*Id.* at ¶ 6.) But Scherwinski's declaration indicates he reviewed other documents and engaged in other communications with senior management

[3] This is in contrast to the declaration of Stephanie Detlefsen, in which she stated where she was located for all of her activities related to Grubb's dismissal. (*See* Doc. 20-3 at ¶ 4.)

employees and obtained approval for Grubb's dismissal. (*Id.* at ¶ 7.) As such, the Court finds that because Scherwinski was involved in Grubb's termination, and because it has not been shown that all of Scherwinski's relevant conduct occurred outside of Montana, it is reasonable to infer at least part of the employment decision was made in Montana.

Moreover, as noted above, the Ninth Circuit has determined that venue is proper in "the forum in which [the employment decision] is implemented or its effects felt." *Passantino*, 212 F.3d 493, 506. In *Passantino*, the Court found that Title VII's venue provision allows suit in the district where "the plaintiff worked or would have worked." *Id.* at 504-05. Thus, "venue should be found where the effect of the unlawful practice is felt; where the plaintiff works, and the decision to engage in the practice is implemented." *Id.* at 505.

In this case, Grubb was working in Montana at the time he was suspended and would have returned to work in Montana had he not been terminated. Therefore, Montana is the district in which the employment decision was felt; it is the district in which Grubb was working and where the decision to suspend and terminate was implemented. He was removed and ultimately terminated from working with his tie gang in Montana.

Accordingly, venue is proper in Montana with regard to Grubb's discharge under the first prong of § 2000e-5(f)(3).

**b. Whether Grubb Would have Worked in Montana But For the Alleged Unlawful Employment Practice**

A plaintiff can satisfy the third venue provision if he would have worked in the judicial district, but for the alleged unlawful employment practice. § 2000e-5(f)(3). Courts have interpreted the use of the article "the" rather than "a" to mean there can only be one proper venue under the third prong. *See e.g. James v. Booz-Allen*, 227 F.Supp.2d 16, 23 (D.D.C. 2002) (finding the use of "the" in the statute, "strongly suggests that the statutory requirement refers to the aggrieved individual's principal place of work, and not any district in which the individual's work might take him."). BNSF asserts that the transient nature of Grubb's job means the third venue provision does not apply.

Cases interpreting the third venue provision have generally involved situations where a white-collar employee was stationed at a primary office but then traveled to other locations to work on temporary assignments. *See e.g. James*, 227 F.Supp.2d at 23-24; *Balunsat v. Stugart*, 1990 WL 91060 (D. D.C. June 20, 1990); *Mayberry v. Int'l Business Machines Corp.*, 2009 WL 1814436, *1 (N.D. Cal. June 25, 2009). In that situation, courts generally do not find venue proper in the location of the remote work assignments. *Id.* These cases are distinguishable from the unique employment situation here, however. Due to the nature of Grubb's work, he did not have a primary office location. (*See* Doc. 20-2 at ¶ 3.)

Rather, as a track laborer on a mobile gang, his principle place of work rotated to each location where he was assigned. Indeed, as BNSF states, when work slows down or ceases during winter months, track laborers "commonly are furloughed or … will bid for other available jobs", indicating there is no home office for them to return to. (Doc. 26-1 at ¶ 5.)

Here, Grubb was working in Montana at the time of his suspension and ultimate termination. It is also clear Grubb would have continued to work in Montana if he had not been suspended and terminated. In fact, it appears his crew continued to work in Montana for an extended period after his suspension. Grubb was suspended on July 26, 2017. (Doc. 20-1 at 57.) BNSF records show the gang to which Grubb was assigned continued to work in Montana through September 11, 2017. (Doc. 26-1 at 31.) Thus, had Grubb not been suspended and terminated he would have continued to work in Montana for an additional 47 days. The Court finds this is a sufficient period of time following the alleged unlawful employment practices to show Grubb would have worked in Montana but for the alleged discrimination.

Venue is therefore proper in Montana with regard to Grubb's suspension and discharge under the third prong of § 2000e-5(f)(3).

/ / /

/ / /

**B. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404**

BNSF next argues that even if venue is proper in Montana, the Court should transfer venue to the Northern District of Texas.

Discretionary changes of venue are governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

Whether to transfer a case is within the Court's discretion, and a decision whether to do so must be based on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). There is no uniform list of factors that courts must weigh to determine whether transfer is appropriate in a particular case. *Id.* Factors that are frequently considered include:

1. the plaintiff's choice of forum,
2. the location where the relevant agreements were negotiated and executed,
3. the convenience of witnesses,
4. the ability of the two forums to compel non-party witnesses to testify,
5. the respective parties' relative contacts with the forums,
6. the state that is most familiar with the governing law,
7. the relative congestion in the two forums,
8. the length of time action has already been pending in the transferor forum,
9. ease of access to sources of proof, and

10. whether there is a 'local interest' in either of the forums.

*Hillerich & Bradsby Co. v. Ace Am. Ins. Co.*, 2012 WL 2359488, *1 (D. Mont. June 20, 2012). *See also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The moving party bears the burden to establish why the forum should be changed. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). When a transfer "would only shift the inconvenience from defendant to plaintiff, the motion to transfer should be denied." *Anderson v. Thompson*, 634 F.Supp. 1201, 1204 (D. Mont. 1986). "[A] transfer is not available to a forum which is equally convenient or inconvenient to the original forum." *Id.*

As discussed, the Court finds venue is proper in the District of Montana. Venue would have also been proper in the Northern District of Texas under the first and second venue provisions of § 2000e-5(f)(3). Therefore, the Court must weigh the relevant factors to determine whether a change of venue will serve the interests of justice and be more convenient for the parties and witnesses.

**a. Plaintiffs' Choice of Forum**

"[A] plaintiff's choice of forum should rarely be disturbed." *Anderson*, 624 F. Supp. at 1204. The Ninth Circuit has cautioned that "[t]he defendant must make

a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. The plaintiff's choice is given less deference, however, when the plaintiff is not a resident or citizen of the forum state. *Piper Aircraft Co. Reyno*, 454 U.S. 235, 255-256 (1981). In addition, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Grubb chose Montana as his choice of forum. Although Grubb is not a Montana resident, the underlying events that gave rise to Grubb's claims occurred here. Grubb was working in Montana, the incident that led to his termination occurred in Montana, Grubb was suspended without pay in Montana by a local supervisor, and at least one decision-maker in Grubb's termination lives and works in Montana. Accordingly, the Court finds Plaintiffs' choice of forum is entitled to deference.

**b. Location Where Relevant Agreements Were Negotiated and Executed**

BNSF argues this factor favors transfer because Grubb's employment-related documents are administered and maintained in Fort Worth, Texas. But advances in technology and electronic discovery render this factor much less important than other factors. Transporting documents no longer creates the large burden it once did. *David v. Alphin*, 2007 WL 39400, *3 (N.D. Cal. Jan. 4, 2007).

This is especially true here, where most of the relevant documents were sent back and forth between Montana, Texas and Kansas. Accordingly, the Court finds that this factor neither favors nor disfavors transfer.

**c. Convenience of Witnesses**

The District of Montana is not a convenient forum for the witnesses who reside in Texas and Kansas. Likewise, the Northern District of Texas is not a convenient forum for the witnesses who reside in Montana and Kansas. "A Court should not transfer venue when the transfer would merely shift the inconvenience from the defendant to the plaintiff." *Hillerich & Bradsby Co.*, 2012 WL 2359488 at *2. Accordingly, this factor weighs against transfer.

Moreover, the "mere fact a party wishes to call witnesses who reside in a transferee district is not sufficient to warrant transfer, unless the party makes a sufficient showing that the witnesses will not attend, or will be severely inconvenienced if litigation proceeds in the transferor forum." *Anderson*, 632 F.Supp. at 1207.

Here, BNSF does not make a sufficient showing to demonstrate that any witnesses will not be available for trial in Montana. BNSF also fails to make a sufficient showing that the witnesses would be severely inconvenienced. Instead, BNSF argues that flights to the Fort Worth area are generally shorter and an average of $31.54 cheaper than flights to Billings. (Doc. 20 at 30-31.) The Court

does not find the lack of direct flights or this minimal cost differential demonstrate a severe inconvenience. Regardless of where this case is litigated, witnesses will have to travel significant distances. Accordingly, the Court finds this factor does not favor transfer.

**d. Ability of Forum to Compel Non-Party Witnesses to Testify**

"The availability of witnesses is obviously an important factor to be considered in determining the propriety of a discretionary transfer." *Anderson*, 634 F.Supp. at 1206. BNSF argues testimony from the hotel employees in Montana is not relevant or necessary, and thus concludes this factor is neutral. Grubb, on the other hand, asserts testimony from the hotel employees in Glendive, Montana, as well as potential comparator hotel employees in Miles City, Montana is material to this case.

The Court declines to rule on the relevance of any particular witness's testimony at this early stage of the litigation. The Court notes, however, that to the extent any hotel employees in Montana may be called to testify at trial, none of them would be within the Northern District of Texas' subpoena power. On the other hand, the witnesses located in Kansas and Texas are BNSF employees. Thus, they "will presumably be willing to testify . . . regardless of inconvenience, precisely because he or she is a [BNSF] employee." *Grady v. CenturyLink Commc'ns, LLC,* 2015 U.S. Dist. LEXIS 158861, *7 (D. Mont. Nov. 24, 2015).

Accordingly, the Court finds this factor weighs against transfer.

**e. Parties' Relative Contacts with the Forums**

Although Grubb does not live in Montana, he was employed in Montana, the underlying events occurred in Montana, BNSF employees investigated and suspended Grubb without pay in Montana, and at least one decision-maker in Grubb's termination lives and works in Montana. BNSF is headquartered in Texas and some of the BNSF employees and relevant documents involved in the case are in Fort Worth. But BNSF has employees in Montana, and conducts work in this state. Whereas, Grubb has little to no contact with Texas. It appears that transferring the action would merely shift the inconvenience from the Defendant to the Plaintiff, which is an impermissible basis for transferring the action. *Anderson*, 634 F.Supp. at 1204. This factor weighs against transferring the action to Texas.

**f. State that is Most Familiar with Governing Law**

This action is based on federal law, and both the District of Montana and the Northern District of Texas are equally familiar with Title VII, the ADA and the FMLA. Accordingly, this factor is neutral. *E.E.O.C. v. United Airlines, Inc.*, 2009 WL 7323651, *5 (N.D. Cal. Dec. 3, 2009).

**g. Relative Congestion of the Forums**

Courts may consider the statistics compiled by the Administrative Office of the United States Courts to assess the relative docket congestion between the

transferee forum and the transferor forum. *RD Rod, LLC*, 2012 WL 6632185 at *16-17; *Hillerich & Bradsby Co.*, 2012 WL 2359488 at *3. For the 12-month period ending in December 2019, the weighted filings per judge in the District of Montana was 388 cases, and in the Northern District of Texas it was 593 cases. *See* Administrative Office of the United States Courts, *U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics* (December 31, 2019) (available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2019.pdf). This factor weights against transfer.

**h. Length of Time Action Has Been Pending in Transferor Forum**

A party's diligence in seeking to transfer venue is a factor courts should take into consideration. *Anderson*, 634 F. Supp. at 1208. Here, BNSF acted diligently by filing two motions to transfer venue. Further, this action has only been pending for a short time. The Court concludes this factor does not strongly weigh in favor or against the motion to transfer.

**i. Ease of Access to Sources of Proof**

Due to "technological advances in document storage and retrieval, transporting documents does not generally create a burden." *Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353, 1362 (N.D. Cal. 2007). Thus, courts have recognized that this factor has a diminished importance, except in cases where there is immovable evidence located in the transferee forum. *Hillerich & Bradsby*

*Co.*, 2012 WL 2359488 at *4; *Grady*, 2015 U.S. Dist. LEXIS 158861 at *5. It does not appear there is any immovable evidence at issue in this case. Therefore, the Court considers this factor neutral.

**j. Local Interest**

Grubb argues Montana has an interest in protecting employees from discrimination. The Court finds both Montana and Texas share this interest in enforcing the law. As such, this factor weighs neither in favor nor against the motion to transfer.

Based on the totality of the factors discussed above, the Court finds they weigh against transferring the action to the Northern District of Texas. As a result, the Court concludes that BNSF has not met its burden of establishing that transfer of venue is appropriate under 28 U.S.C. §1404. BNSF's request for a transfer of venue should therefore be denied.

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that BNSF's Renewed Motion to Dismiss for Improper Venue or Alternatively to Transfer Venue (Doc. 19) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED.**

DATED this 26th day of May, 2020.

TIMOTHY J. CAVAN
United States Magistrate Judge