IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

AUG 2 6 2020

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| EDWARD W. GRUBB, III<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br><br>Defendant. | CV 19-50-BLG-SPW<br><br>ORDER |

Before the Court is United States Magistrate Judge Timothy Cavan's findings and recommendation filed May 26, 2020. (Doc. 27). Judge Cavan recommends the Court deny Defendant's renewed motion to dismiss for improper venue or alternatively to transfer venue. (Doc. 19). For the following reasons, the Court adopts Judge Cavan's recommendation.

I.   **STANDARD OF REVIEW**

Defendant filed timely objections to the findings and recommendation concerning Defendant's Motion to Dismiss. (Doc. 28). Defendant is entitled to de novo review of those portions of Judge Cavan's findings and recommendation to which they properly object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

II.  **FACTUAL SUMMARY**

1

Plaintiff Edward Grubb worked for BNSF from March 2012 to August 2017. During that time, Grubb worked as a track laborer on mobile tie gangs. This meant that Grubb traveled to various locations across the country to work on sections of rail line for short periods at a time. Three of these locations included areas in Missouri where he worked jobs on March 18, 2013, July 22, 2013, and November 27, 2013. Grubb eventually established a residence in Northwest Missouri in February 2017.

In August 2016, Grubb went on medical leave to seek treatment for several mental disorders. Grubb had previously learned that his young son had been diagnosed with brain cancer which exacerbated his mental health condition. Upon returning to work, Grubb informed BNSF of his mental condition and the medication he took. Sometime between June and July of 2017, Grubb requested a transfer to Montana in order to be closer to his son and his son's medical providers.

On July 26, 2017, Grubb experienced what he termed an adverse reaction to a new mental health medication he was prescribed. He was found asleep in the stairwell of a Holiday Inn Express in Glendive, Montana by the hotel's night auditor at 6:30 a.m. The auditor woke Grubb up who then told the auditor that he needed to check out of his room. The auditor recognized that Grubb's hotel room key did not match those issued for Holiday Inn guests and verified that Grubb was not staying at that hotel. Grubb made his way to the Super 8 hotel around 7:30 a.m.

2

and requested to check out of his room there. However, Super 8 staff informed Grubb that he also was not a registered guest of that hotel. Grubb reacted negatively to his information, becoming belligerent and yelling at the staff that he was certain he was a guest there. Grubb then stormed out of the hotel lobby, breaking part of the door on his way out and causing $65 in damage.

Daniel Burbach, Grubb's director supervisor, learned of this altercation at 2:00 p.m. that day. Burbach conducted an investigation and obtained statements from the hotel staff. At 5:30 p.m., Burbach informed Grubb that he would be suspended without pay pending further investigation into the incident.

An investigation hearing was scheduled for August 4, 2017 in Glendive, Montana; however, the hearing was moved to Kansas City, Kansas at the request of Grubb's union. Samuel Turnbull conducted the hearing and heard testimony from Burbach about his investigation. Turnbull then forwarded a transcript of the hearing to Chad Scherwinski, a General Director of Line Maintenance. Scherwinski's office is located in Montana. Upon review of the transcript, Scherwinski replied that Turnbull should email part of the Labor Relations Department, called the PEPA team, to ask for their recommendation. Scherwinski also expressed his desire to proceed with Grubb's dismissal. The reply email was sent at 5:32 p.m. on August 11, 2017 when Scherwinski was physically in Bismarck, North Dakota.

3

Turnbull emailed the PEPA team on August 12, 2017 and expressed his own recommendation to dismiss Grubb. Stephanie Detlefsen, Director of Labor Relations, responded to Turnbull's email indicating her support of the dismissal. Detlefsen's office is located at the BNSF headquarters in Fort Worth, Texas. Detlefsen copied Scherwinski on the response email. Scherwinski proceeded to email two other Assistant Vice-Presidents of BNSF for their recommendation regarding the dismissal. Neither Vice-President disagreed with dismissal and, on August 22, 2017, BNSF terminated Grubb from his employment. The dismissal letter was sent to Grubb's home in Missouri.

Grubb initiated the present action alleging BNSF violated his rights under the Americans with Disabilities Act when BNSF suspended him without pay and later terminated his employment.

## III. PLAINTIFFS' OBJECTIONS

Judge Cavan recommended denying BNSF's motion to dismiss finding that Grubb felt the effects of the suspension and termination in Montana and would have continued working in Montana but for the termination. Montana was therefore a proper venue under Title VII's special venue provision. BNSF argues Judge Cavan erred by confusing venue for Grubb's termination with venue for Grubb's suspension. Defendant urges this Court to reject Judge Cavan's findings and recommendation because Grubb's could not have felt the effects of his

4

termination in Montana when he was no longer present in Montana and the decision to terminate was not made in Montana. While this Court disagrees with one of Judge Cavan's findings, the Court reaches the same conclusion as Judge Cavan's recommendation.

## IV. DISCUSSION

### A. Motion Dismiss under Rule 12(b)(3).

Federal Rule of Civil Procedure 12(b)(3) allows a party to challenge a claim for relief by asserting the defense of improper venue. Once challenged, the plaintiff bears the burden of proving that the selected venue is proper for the action. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009). The Court must construe all inferences in favor of the non-moving party when considering a Rule 12(b)(3) motion to dismiss. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). However, the "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Should the Court find venue improper, it has discretion to either dismiss the case or transfer the case to a proper venue. 28 U.S.C. § 1406(a).

ADA claims, such as those claimed by Grubb, are subject to the special venue provision of Title VII, 42 U.S.C. § 2000e-5(f)(3). *Johnson v. Payless Drug*

*Stores Nw. Inc.*, 950 F.2d 586, 587-88 (9th Cir. 1991). Under that statute, venue is proper:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed;
>
> [2] in the judicial district in which the employment records relevant to such practice are maintained and administered; or
>
> [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice; but
>
> [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

Title VII's special venue provision controls when applicable, even if non-Title VII claims are included in the lawsuit. *Mayberry v. Int'l Business Machines Corp.*, 2009 U.S. Dist. LEXIS 58936, *6-7 (N.D. Cal. June 25, 2009).

Grubb's Complaint lists three claims under the ADA: 1) Disability Discrimination; 2) Associational Discrimination; and 3) Retaliation. (Doc. 18 at 6-10). He further asserts that Montana is a proper venue for all claims based on his suspension and later dismissal by BNSF. BNSF concedes that Montana is a proper venue for Grubb's suspension, but contests Montana as a proper venue for Grubb's termination. Because venue is improper for one alleged discriminatory act, BNSF argues that venue is improper for all acts in Montana. Judge Cavan disagreed with

6

this argument, noting that BNSF failed to cite any legal support for the theory[1], but determined nevertheless that the facts established proper venue for Grubb's allegedly discriminatory termination in Montana.

### 1. Whether the unlawful employment practice was committed in Montana.

Judge Cavan concluded that Grubb felt the effects of his termination in Montana and that it was possible at least one decision-maker at BNSF, Chad Scherwinski, made the determination to dismiss Grubb in the state. BNSF maintains that Judge Cavan erred in this finding by considering the non-relevant conduct of Scherwinski despite his affidavit stating he was physically in North Dakota when he sent his recommendation email. The act of sending the email, BNSF argues, should be the only conduct analyzed to determine where the decision to terminate Grubb occurred.

In *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 943 (9th Cir. 2000), the Ninth Circuit expressed that "[i]n general, the effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff worked or would have worked." 212 F.3d at 504-05 (citation omitted). Regarding the first criteria of the venue provision, that meant a complaining party could establish

---

[1] In BNSF's Objection to the findings and recommendation, the party cites *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101 (2002), for support of their argument that venue must be established for all alleged acts. Grubb argued in his reply that this case is inapplicable to the present circumstances as it does not directly address the issue. Because this Court finds that the facts establish venue in Montana for all acts, this argument need not be addressed.

7

proper venue in the state or district where the decision to engage in the discriminatory act took place or was implemented or its effects were felt. *Id.* at 506.

This Court agrees that Grubb felt the effect of his termination in Montana but not that the decision to terminate Grubb was made in the state.

Judge Cavan found that Grubb felt the effect of his termination in Montana because Grubb worked in the state at the time of his suspension. BNSF disagreed explaining that though Grubb was in Montana for the suspension, he was not in Montana for the termination, did not receive notice of his termination in Montana, and could not feel the effect of it in a state he was no longer present in. This argument appears convincing but ultimately fails the test of precedent. The Ninth Circuit intended their interpretation of Title VII's venue provision to align with the Congressional intent "to afford citizens full and easy redress of civil rights grievances." *Passantino*, 212 F.3d at 504 (citing *Richardson v. Alabama State Board of Education*, 935 F.2d 1240, 1248 (11th Cir. 1991)). Those citizens "feel the effects of their injury where they actually work." *Id.* at 505. It is undisputed that Grubb actually worked in Montana. As a track laborer, Grubb did not have a permanent terminal which he would have returned to after the Montana job was completed. He transferred to Montana for the sole reason of working in Montana. When BNSF terminated Grubb, the company terminated him from his position in

Montana. Thus, Grubb felt the effects of the termination in Montana and venue is proper here under the first basis of Title VII's special venue provision.

Judge Cavan further found that BNSF failed to demonstrate all decision-making related to Grubb's termination took place outside of Montana. BNSF argues that this conclusion misapplies the burden to demonstrate proper venue placed on the plaintiff. *Piedmont*, 598 F.2d at 496. This Court agrees. Judge Cavan also determined that, although Scherwinski stated he was physically in North Dakota when he sent the email detailing his recommendation for dismissal, Scherwinski's affidavit was silent as to his location when he received the information. It was therefore reasonable to conclude at least part of the decision could have been made in Montana. However, the relevant conduct under this venue basis is the making of the decision. Scherwinski made the decision when he sent the email. Prior to this, Scherwinski would have been free to change his mind and no one would have known otherwise. The act of sending the email marks the point at which Scherwinski expressed his recommendation and took action to carry out Grubb's termination. Because Scherwinski did not send the email in Montana, his decision was not made in Montana nor is there any evidence that any other supervisor made a decision to terminate Grubb in Montana.

Nevertheless, venue for Grubb's ADA claims is still proper in Montana as the district where Grubb felt the effects of BNSF's allegedly discriminatory employment acts.

### 2. Whether Grubb would have worked in Montana but for the alleged unlawful employment practice.

Alternatively, Judge Cavan found that Grubb satisfied Title VII's third venue basis because he would have continued working in Montana but for BNSF's decision to terminate his employment. The Court concurs in this finding. Under this basis, the statutory language of 'the judicial district' instead of 'a judicial district' appears to narrow the applicable location where venue is proper to one. *Callahan v. BNSF Ry.*, 2018 U.S. Dist. LEXIS 121617, *19 (D. Or. 2018). This basis typically provides a straightforward avenue for plaintiffs to establish venue as the majority of individuals work in a single, established location. The issue becomes muddied in situations, such as here, when the plaintiff's occupation is more transient in nature. *Id.* *20. BNSF argues that Grubb's employment was so transient, in fact, that Title VII's third venue basis does not apply at all.

As Judge Cavan points out, multiple cases have examined the issue of finding Title VII venue in situations where the plaintiff traveled for work or happened to be in a district on a temporary job assignment. *See e.g. Mayberry*, 2009 U.S. Dist. LEXIS 58936 at *1; *James v. Booz-Allen*, 227 F.Supp.2d 16, 23-24 (D.D.C. 2002). Courts generally find that venue is improper in the remote or

10

temporary location if it differs from the plaintiff's permanent or home base location. *Callahan*, 2018 U.S. Dist. LEXIS 121617 at *23. Grubb did not have a home base or primary office location. BNSF employed Grubb as a track laborer on a mobile tie gang. The nature of that employment involves traveling from jobsite to jobsite depending on where the work assignment happened to be. When opportunities for work became scarce, track laborers were often furloughed or had to bid for other jobs.

Despite the temporary nature of Grubb's employment, the labor records of Grubb's work crew indicate that they continued to work in Montana for 20 days after the date of Grubb's termination. BNSF concedes this fact but argues that this amount of time is not long enough to satisfy the requirements of Title VII's third venue basis. However, the venue provision contains no such limitation and, as BNSF cites, "the statutory language does not limit consideration of where the employee would have worked to a particular point in time." *Mayberry*, 2009 U.S. Dist. LEXIS 58936 at *9. Grubb would have returned to work in Montana for 20 days but for BNSF's decision to terminate his employment. Therefore, venue is proper in Montana under Title VII.

### B. Alternative Motion to Transfer Venue.

In their motion to dismiss, BNSF alternatively moved to transfer venue to the Northern District of Texas. Judge Cavan found that the numerous factors used

11

to weigh the decision did not favor a transfer. (Doc. 27 at 21). BNSF did not object to this portion of the findings and recommendation. Without objection, a court reviews the findings and recommendation for clear error. Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax,* 235 F.3d 422, 427 (9th Cir.2000). The Court does not find that Judge Cavan committed clear error in determining that BNSF failed to satisfy its burden under a motion to transfer venue.

## V. Conclusion and order

It is hereby ordered that:

1. Judge Cavan's findings and recommendation are adopted in full except as to his finding that venue is alternatively proper because BNSF made the decision to terminate Grubb in Montana;

2. Defendant's Motion to Dismiss is DENIED.

3. Defendant's Alternative Motion to Transfer Venue is DENIED.

DATED this 27th day of August, 2020.

_____
SUSAN P. WATTERS
United States District Judge